593 So.2d 1069 (1992)
Troy Clinton BENNETT, Appellant,
v.
STATE of Florida, Appellee.
No. 90-1608.
District Court of Appeal of Florida, First District.
January 14, 1992.
Upon Motion for Certification February 13, 1992.
Rehearing Denied February 19, 1992.
*1070 Nancy A. Daniels, Public Defender, Nancy L. Showalter, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Bradley R. Bischoff, Asst. Atty. Gen., Tallahassee, for appellee.
WOLF, Judge.
Bennett appeals from separate final judgments and sentences, one for possession of cocaine and one for sale of cocaine. Appellant raises two issues on appeal. He first asserts that the trial court erred in admitting evidence of a collateral crime where there was an insufficient showing of similarity between the two offenses. We find that evidence of subsequent contact between the undercover officer and appellant within three hours of the charged offense was relevant to the issue of identity and was properly admitted. The second point raised is whether the trial court erred in sentencing appellant as a habitual offender pursuant to section 775.084, Florida Statutes (Supp. 1988), where the appellant's two prior convictions were not sequential. The habitual offender designation violated the rule requiring sequential convictions announced in Barnes v. State, 576 So.2d 758 (Fla. 1st DCA 1991), and the sentences must be vacated.
On June 27, 1989, Officer Steven Tolver was working with Sergeant Pitts of the Panama City Police Department in an undercover drug operation. At approximately 9:30 p.m., Tolver went to the area of the Safari Lounge with a confidential informant. As they approached the parking lot of the lounge in Tolver's car, they saw eight to ten black males standing against a wall at the corner of the building. The confidential informant asked them "what is happening," at which time one of the black males approached the car on the passenger side. Tolver was in the driver's seat. Tolver told the black male that he wanted to buy a "20," which Tolver testified is slang for a $20 piece of crack cocaine. The man reached into his pocket and removed one rock-like substance and handed it to Tolver, who in turn handed him $20. The entire transaction lasted 10 to 15 seconds.
Tolver placed the cocaine in an envelope and returned to the police station. The informant told Sergeant Pitts the seller's identity. Tolver did not know the seller prior to this time. He was shown a book containing 60 to 80 photographs and identified appellant as the seller.
At trial, the state introduced, over appellant's objection, evidence of a subsequent contact on the night in question between Officer Tolver and appellant. The appellant objected on the basis that the two crimes were not sufficiently similar to allow introduction of the collateral crime, and that the defense had not specifically challenged identity.[1]
Officer Tolver testified that approximately three hours after the charged offense occurred, he and the confidential informant went to an area two blocks away from the original sale and observed six or seven people on the side of the street. They came upon a black male who asked, "Whatcha looking for?" Tolver responded that he was looking for a $20 piece of crack cocaine. The seller then dropped a white rock-like substance into Tolver's hand. Tolver stated that he could not see the rock "that well" and believed it was unusually heavy for crack cocaine. In fact, the substance was later determined not to be cocaine. Tolver testified that he recognized appellant as the same person involved in the earlier transaction at the Safari Lounge. He was dressed in the same manner as he had been earlier. Tolver also saw this seller on the street the following day, although no transaction occurred at that time.
*1071 The judge cautioned the jury that the collateral crime evidence was only being introduced for the purpose of identity and should only be considered for that purpose.
Evidence of collateral crimes committed by the defendant is inadmissible if its sole relevance is to establish bad character or propensity of the accused. Williams v. State, 110 So.2d 654 (Fla. 1959), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). Such evidence is admissible, however, if it is relevant or material to some aspect of the offense being tried. Jackson v. State, 522 So.2d 802, 805 (Fla. 1988). In determining admissibility, the court must determine whether the probative value is outweighed by any improper prejudice. Jackson, supra at 806; United States v. King, 703 F.2d 119 (5th Cir.1983), cert. denied, 464 U.S. 837, 104 S.Ct. 127, 78 L.Ed.2d 123 (1983). A cautionary jury instruction, such as the one given in the instant case, will help ensure that the probative value of the evidence was not outweighed by any unfair prejudice. See United States v. Clemons, 676 F.2d 122 (5th Cir.1982).
Appellant argues that the evidence of the collateral crime is not relevant because it was not sufficiently similar to the charged offense. We reject appellant's contention that admissibility must be based on similarity of crimes.
Collateral crime evidence may be relevant for a number of purposes notwithstanding the similarity or lack of similarity of the offenses. Jackson, supra. For instance, the opportunity to observe the defendant during or subsequent to the commission of a crime is relevant to the ability of a witness to make an accurate identification. United States v. King, supra; Williams v. State, 545 So.2d 302 (Fla. 3d DCA 1989). Temporal and geographic proximity are all factors to be considered in determining the probative value of the evidence offered. Cf. Spivey v. State, 533 So.2d 306 (Fla. 1st DCA 1988). The opportunity to see the appellant in the same clothes, two blocks away, less than three and one-half hours after the first transaction is clearly relevant to the credibility of the officer's identification testimony. The trial court did not abuse its discretion in permitting this evidence to be heard by the jury.
We also reject appellant's argument that evidence must be excluded because identity had not specifically been raised as a defense. In the case of an undercover buy of drugs, clearly one of the main issues that the state must prove is the identity of the seller. We, therefore, find that the trial judge did not abuse his discretion in admitting the evidence and affirm the convictions. The sentences, however, are vacated and the cases are remanded for resentencing.
BOOTH, J., concurs.
KAHN, J., concurs in part and dissents in part with written opinion.
KAHN, Judge, concurring in part and dissenting in part.
I concur in the court's judgment reversing Bennett's sentence, but must dissent as to that part of the court's opinion upholding Bennett's conviction for sale of cocaine. The trial court erroneously admitted evidence implicating Bennett in a later, unrelated transaction.
The majority opinion concedes that the two transactions did not have the similarity heretofore required in cases utilizing collateral crime evidence on the issue of identity. The court proceeds, however, to carve out a niche for cases in which eyewitness testimony of identity is bolstered by additional testimony that the same eyewitness observed the defendant commit another, yet unrelated, criminal act, within close temporal and geographical proximity to the act for which the defendant is on trial. The court's rationale is that the testimony of the collateral crime is "clearly relevant to the credibility of the officer's identification testimony."
The position adopted by the majority would erase any definable limitation on the admissibility of similar crime evidence where the defense as much as questions the reliability of the sole eyewitness to a *1072 criminal transaction. In the present case, Officer Tolver claims to have bought cocaine from Bennett in the first transaction. Utilizing information obtained from the confidential informant, the police department prepared a photo lineup consisting of a book containing 60 to 80 photographs. When Tolver returned to the police station, he looked at this book and identified Mr. Bennett after viewing one or two pages of the book. Significantly, at that time Tolver had no doubt in his mind that the person he identified was the one who had just sold him the cocaine. The site of Tolver's buy was a very well lit parking lot, allowing Tolver a clear view of the seller. After Tolver testified to these matters of identification, the state announced its intention to introduce evidence of the later, uncharged transaction. The defense lawyer, Mr. Dusseault, argued that the evidence should not come in because Bennett had already been identified by Tolver. The trial judge indicated his initial impression, however, that the proposed evidence would be "admissible, if nothing else, for the purpose of identifying the defendant." Mr. Dusseault then reminded the judge that no defense at all had been put on yet. The following colloquy then transpired:
THE COURT: Okay, then I'm going to defer ruling on this motion until after you have rested, at which time I may present, I may permit the state to come back and offer similar, similar fact evidence in rebuttal.
.....
THE COURT: It would appear to me that it is going to be admissible for the purpose of identity, if nothing else. What is wrong with reserving this until rebuttal, Mr. Basford (prosecutor)?
MR. BASFORD: Because, Judge, he may not put on any evidence whatsoever, as he, as Mr. Dusseault has 
THE COURT: Then, then 
MR. BASFORD:  correctly informed the Jury 
THE COURT: Then, then there's no, then there's no challenge to identity 
MR. BASFORD: Well 
THE COURT:  except to argue, right?

MR. BASFORD: As Mr. Dusseault has correctly informed the Jury, the State has the burden of proving each and every element in this case beyond a reasonable doubt, and, you know, he may think it's in his best interest or his client's best interest for him not to take the stand, yet he can still get up and argue the State has not proven identity, all you have is a sale that occurred, that took 15 to 20 second [sic], and the guy could've made a mistake, and that's not the facts here, Judge, because not only did he see him on that occasion, he also saw him within three hours, and he made another buy from the same man.
MR. DUSSEAULT: Judge, none of that's come into evidence, and 
THE COURT: I'm going to permit it, if you want a cautionary instruction, Mr. Dusseault, draft one. Are you offering it solely for the purpose of identity?
MR. BASFORD: Yes sir, Your Honor.
Upon this background, the trial court erred in allowing similar fact evidence for the purpose of proving identity. The majority, in affirming the conviction, has as much as stated that since identity is always an issue in an "undercover buy of drugs," the state has virtually free reign to introduce collateral crime evidence, as long as the witness who claims to have seen the defendant commit the collateral crime is the same witness upon whom the state relies to prove commission of the crime actually charged. The court's citation of Spivey v. State, 533 So.2d 306 (Fla. 1st DCA 1988), does not, in my view, support a conclusion that the temporal and geographic proximity between the two events are sufficient to lend probative value to the collateral transaction. In Spivey, the defendant was actually charged with both offenses, two distinct victims were involved, and the sole issue decided was whether the trial court abused its discretion in denying the defendant's motion for severance.
Section 90.404(2), Florida Statutes, provides:
Other crimes, wrongs, or acts 

*1073 (a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of ... identity ..., but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
The evidence of Bennett's participation in a "similar" drug transaction three hours later did not tend to prove Bennett's identity as the person who sold the first $20 rock of crack. Instead, the evidence served merely to bootstrap the undercover officer's credibility, in a case where credibility was obviously the key issue, and further suggested appellant's propensity as a drug dealer. I would respectfully suggest that this sort of "identity" evidence is not contemplated by § 90.404(2). In Marion v. State, 287 So.2d 419 (Fla. 4th DCA 1974), cert. denied, 294 So.2d 91 (Fla. 1974), the court discussed the requirements of the similar fact rule as established by the supreme court in Williams v. State, 110 So.2d 654 (Fla. 1959). Having cited State v. Norris, 168 So.2d 541, 543 (Fla. 1964), for the proposition that the objective to be accomplished by allowing such evidence is not proof of a collateral crime, but rather to prove a fact at issue in a case before the court, the Fourth District offered the following analysis:
If there is no fact `in issue' there is no relevancy and the collateral evidence should not be admitted. See 13 Fla.Jur., Evidence, § 113. Evidence is admissible if it is relevant to prove identity, to show a common scheme or design, to show guilty knowledge, to prove intent, motive, or pattern, to show absence of mistake, to show a system of general pattern of criminality, to disprove an alibi, to disprove unlawful entrapment, or as part of the res gestae. If none of these elements are `in issue' relevancy disappears and such evidence is inadmissible. Obviously, if a person's identity is not in issue, e.g. eyewitness testimony clearly identifying the accused, how is it relevant to introduce evidence that the defendant was `identified' as having participated in another criminal act. And if identity is in issue, the mere fact that a defendant was identified as being involved in another crime does not render such collateral evidence admissible without some similarity in the operation and scheme of both crimes; there is clearly an interrelationship between method of operation, common scheme or design and identity.
287 So.2d at 422 (emphasis in original).
Since, in the present case, Officer Tolver provided a clear and unequivocal eyewitness identification, it is very difficult to understand the admission of collateral crime evidence during the state's case in chief.
As implicitly conceded by the majority, the two transactions, one of which did not even involve a drug sale, do not meet the supreme court's test of sufficient similarity. Collateral crime evidence is not relevant and therefore admissible merely because it involves the same type of crime. Peek v. State, 488 So.2d 52 (Fla. 1986). As the court stated in Drake v. State, 400 So.2d 1217, 1219 (Fla. 1981):
A mere general similarity will not render the similar facts legally relevant to show identity. There must be identifiable points of similarity which pervade the compared factual situations ... [I]n order for the similar facts to be relevant the points of similarity must have some special character or be so unusual as to point to the defendant.
This court has clearly recognized an interplay between § 90.404(2), Florida Statutes (1989), and § 90.403, Florida Statutes (1989). In Carr v. State, 578 So.2d 398 (Fla. 1st DCA 1991), the court reversed a conviction because of the admission of similar fact evidence for the sole purpose of showing the defendant's propensity to possess cocaine. The court observed that under § 90.403, relevant evidence should be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.
Recently, this court has had occasion to further examine, and reaffirm, the relationship between § 90.403 and § 90.404(2). In Thomas v. State, 1992 WL 83071, 17 FLW *1074 D1123 (Fla. 1st DCA April 28, 1992), opinion on rehearing, Judge Zehmer, for the majority, made the following observations:
The issue under discussion is governed by the pertinent provisions in the Florida Evidence Code. Section 90.401 states, `Relevant evidence is evidence tending to prove or disprove a material fact.' Section 90.402 states, `All relevant evidence is admissible, except as provided by law.' Section 90.403 states, `Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.' The sponsor note to this section explains that `nothing that fails to meet the tests of §§ 90.401 and 90.403 may be admitted.' Accordingly, section 90.404(2)(a) recognizes the interplay of section 90.401 and 90.403 by specifying that `similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue.' Since similar fact evidence of other crimes is inherently prejudicial to a criminal defendant's right to a fair trial, such evidence is admissible under section 90.404(2)(a) only to prove a material fact in issue, that is, a material fact that is genuinely in dispute. (emphasis in original)
1992 WL 83071 [*]3, 17 FLW at 1124.
Recognizing that our supreme court still applies the "strikingly similar" standard to collateral crime evidence, the Thomas court noted the following language from Heuring v. State, 513 So.2d 122, 124 (Fla. 1987):
Similar fact evidence that the defendant committed a collateral offense is inherently prejudicial. Introduction of such evidence creates the risk that a conviction will be based on the defendant's bad character or propensity to commit crimes, rather than on proof that he committed the charged offense [citations omitted]. Such evidence is, therefore, inadmissible if solely relevant to bad character or propensity to commit the crime [citations omitted]. To minimize the risk of a wrongful conviction, the similar fact evidence must meet a strict standard of relevance. The charged and collateral offenses must be not only strikingly similar, but they must also share some unique characteristics which sets them apart from other offenses. (emphasis in original)
1992 WL 83071 [*]3, 17 FLW at D1124, quoting Heuring v. State, 513 So.2d at 124.
The case law leads to the inescapable conclusion that § 90.404(2) provides no meaningful guide for admissibility, unless the trial court is required in each instance to weigh the probative value of the proposed similar fact evidence against the danger of unfair prejudice, as required by § 90.403. The federal cases relied upon by the majority, United States v. Clemons, 676 F.2d 122 (5th Cir.1982), and United States v. King, 703 F.2d 119 (5th Cir.1983), cert. denied 464 U.S. 837, 104 S.Ct. 127, 78 L.Ed.2d 123 (1983), presume such a requirement, and analyze admissibility of the extrinsic evidence in light of Federal Rule 403, the substantial equivalent of § 90.403 in Florida. Indeed, the majority in the present case admits that the trial court must make a § 90.403 determination. The record before us is, however, devoid of any such determination. I cannot assume that the trial court made the required determination. Officer Tolver was the only witness to the transaction, and his testimony was completely uncorroborated, but for the similar fact evidence he was allowed to provide. Cf., Garrette v. State, 501 So.2d 1376, 1378 (Fla. 1st DCA 1987) (rejecting the state's argument that improperly admitted similar fact evidence was harmless where the only evidence identifying the defendant was the testimony of a single eyewitness, even where the eyewitness was a police officer). Tolver's prior testimony that he had absolutely no doubt about who sold him the cocaine, and that the parking lot in which he made the buy was very well lit, are factors, ignored by both the trial court and the majority, which militate against the admission of the collateral evidence for purposes of identity. Simply put, Officer Tolver could not have been more steadfastly certain about his identification of Bennett. Accordingly, I must conclude that the primary purpose served by testimony *1075 concerning the later transaction was not to merely prove identity (which it did not logically do), but to demonstrate Bennett's criminal propensity.
The rule requiring more than a mere general similarity is quite easily explained when one considers, even for a moment, the relationship between § 90.403 and § 90.404(2), discussed above. The very fact that two criminal transactions, allegedly involving the same defendant, have "strikingly similar" characteristics, serves to tip the § 90.403 scales in favor of probative value. On the other hand, where the similarity test is ignored, the unfair prejudice side of the § 90.403 scale is not counterbalanced, and the proffered evidence does not reach the threshold of admissibility required by § 90.403.
To summarize, Officer Tolver was the only eyewitness to the alleged sale of cocaine. Tolver testified he had a very clear view of Bennett, and had no doubt about identity. The second transaction took place in a different locale, under different circumstances, and did not even involve the actual sale of drugs. In reaching its conclusion, the majority expressly abrogates the similarity rule ("We reject appellant's contention that admissibility must be based on similarity of crimes"), in favor of a rule that looks simply at the witness' ability to make an accurate identification based on the "opportunity to observe the defendant during or subsequent to the commission of a crime," regardless of whether such observation involves a collateral, uncharged, crime.
I would reverse the conviction and remand for a new trial.

UPON MOTION FOR CERTIFICATION
WOLF, Judge.
Upon rehearing, we grant the appellee's request to certify the same question that was certified in Barnes v. State, 576 So.2d 758 (Fla. 1st DCA 1991).
BOOTH and KAHN, JJ., concur.
NOTES
[1] The defendant objected to the testimony in its entirety and never sought to delete references to the subsequent criminal activities from the testimony concerning the subsequent encounter. In the absence of such a request, we will not reach the issue of whether the testimony could have been sanitized to avoid references to the subsequent criminal behavior, or whether such action would have been required if a proper request had been made.